UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| | |
|---|---|
| Case No. | LA CR18-00001 JAK |
| Date | April 13, 2021 |

| | |
|---|---|
| Present: The Honorable | John A. Kronstadt, United States District Judge |
| Interpreter | N/A |

| T. Jackson | Not Reported | Not Present: James C. Hughes |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Ismael Michael Padilla | No | | X | | | | |

**Proceedings:** IN CHAMBERS) ORDER RE MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. 3582(c)(1) (DKT. 37)

**I.      Introduction**

On February 8, 2018, Ismael Michael Padilla ("Padilla" or "Defendant") pleaded guilty to two counts of aiding or assisting in the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2). *See* Dkt. 1 (information); Dkt. 18 (minutes of change of plea hearing). On May 31, 2018, Defendant was sentenced to 24 months in custody for each count, to be served consecutively, and 12 months of supervised release. Dkt. 31 (Judgment and Commitment). Defendant is currently incarcerated at the Metropolitan Detention Center ("MDC") in Los Angeles, California. Dkt. 37 at 1. Taking into account credit for good conduct, Defendant's projected release date is December 21, 2021. Dkt. 37-9 at 2.

On February 18, 2021, Defendant filed a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1). Dkt. 37 (the "Motion"). Through the Motion, Defendant seeks an order releasing him from custody and having him complete the remainder of his sentence in home confinement. *Id.* at 10. The Government filed an Opposition to the Motion on February 25, 2021. Dkt. 39 (the "Opposition"). REDACTED

Pursuant to Fed. R. Crim. P. 43(b)(4), it is not required that a defendant be present in connection with a process that "involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See also Dillon v. United States*, 560 U.S. 817, 827-28 (2010). Further, based on a consideration of the matters presented by the Motion, it is determined that it is one that can be decided without a hearing. Dkt. 43. For the reasons stated in this Order, the Motion is **DENIED**.

**II.     Legal Standards**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

  A.  The First Step Act

In 2018, Congress passed the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194. The statute amended the procedures through which a defendant may seek a reduction of a sentence based on a request for "compassionate release." Such requests are addressed at 18 U.S.C. § 3582(c)(1)(A), which provides the following procedures:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Under these terms, a request for compassionate release requires a three-step process. *First*, before commencing a judicial proceeding, a defendant must exhaust administrative remedies. A defendant can do so by either "exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or waiting until "the lapse of 30 days from receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). *Second*, upon receiving a compassionate release motion that is presented after administrative remedies have been exhausted, a district court evaluates whether "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id. Third*, in assessing whether release would be appropriate, a district court "consider[s] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." *Id.*

In a motion for compassionate release, the defendant "bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction." *United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

  A.  Exhaustion of Administrative Remedies

    1.  <u>Legal Standards</u>

Procedural conditions, *e.g.*, a requirement to exhaust administrative remedies, may limit the jurisdiction of a district court. However, Congress must make clear its intent to make such a limitation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006). The statute must "speak in jurisdictional terms or refer . . . to the jurisdiction of the district courts." *Id.* (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). Failure to comply with a jurisdictional limitation may not be excused by a court, even if the non-moving party does not object. Because "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction…they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Procedural conditions that do not limit jurisdiction have been characterized as "mandatory claims-processing rules." These rules are "'mandatory' in the sense that a court must enforce the rule if a party properly raises it." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005)). If the non-moving party does not so object, these rules "may be waived or forfeited." *Hamer v. Neighborhood Housing Servs. of Chicago*, 138 S. Ct. 13, 17 & n.1 (waiver is the "intentional relinquishment or abandonment of a known right" and forfeiture is "the failure to make the timely assertion of a right") (internal citations omitted). The Supreme Court has "reserved whether mandatory claim-processing rules may be subject to equitable exceptions" that go beyond waiver and forfeiture. *Id.* at 18 n.3. The Ninth Circuit has concluded that certain claim-processing rules may be subject to equitable tolling. *See, e.g.*, *Forester v. Chertoff*, 500 F.3d 920, 929 (9th Cir. 2007) (nonjurisdictional waiting period mandated by statute "may be forfeited, waived, or equitably modified").

The Supreme Court also has held that mandatory exhaustion requirements, which are distinct from claim-processing rules, may not be deemed waived under equitable principles, or similar ones, that could be applied by trial courts. "[M]andatory exhaustion statutes…establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (citing *Miller v. French*, 520 U.S. 327, 337 (2000); *McNeil v. United States*, 508 U.S. 106, 111 (1993)). In this context, a court may not excuse a failure to exhaust, even to take [special circumstances] into account." *Id.* at 1856. *See also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Whether Congress has adopted such a mandatory exhaustion requirement is determined primarily by evaluating the text of the statute. The legislative history may also be considered as part of the analysis. *See Ross*, 136 S. Ct. at 1856-58 (emphasizing the text of the Prison Litigation Reform Act of 1995, and also considering its legislative history).

This Court has previously determined that the exhaustion requirement, which "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," is mandatory, but not jurisdictional. *United States v. Neman*, No. 2:14-cr-00521 JAK, Dkt. 863 at 4 and n.4 (Mar. 30, 2020) (quoting *Arbaugh*, 546 U.S. at 502). The Ninth Circuit has not yet addressed this issue. However, the Fifth, Sixth, Seventh and Eleventh Circuits have held that the requirement is not jurisdictional. *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021)

      2.      <u>Application</u>

Defendant filed a request for compassionate release on December 7, 2020. The Warden of his facility denied the request on January 15, 2021. Dkt. 37 at 7; Dkt. 37-9 (denial).

A defendant may file a compassionate release motion in a civil proceeding 30 days after the warden has receives the request, whether or not the warden has acted on the request within that time period. *United States v. Gutierrez*, No. 2:14-cr-00429-JAK-SS, Dkt. 2194 at 5 (C.D. Cal. Sep. 5, 2020). Again, the Ninth Circuit has not yet addressed this issue, but two other circuits have adopted this approach. *Alam*, 960 F.3d at 834 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them."); *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). The Motion was filed on February 18, 2021, which was more than 30 days after the Warden received the request. The parties agree that the exhaustion requirement has been satisfied. Dkt. 37 at 7; Dkt. 39 at 11. Because the administrative remedies were exhausted, there is jurisdiction to consider the Motion.

    B.    Extraordinary and Compelling Reasons and Sentencing Commission Policy Statements

        1.    <u>Legal Standards</u>

Pursuant to § 3582(c)(1)(A), the United States Sentencing Commission is required to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Application Note 1 to U.S.S.G. § 1B1.13 identifies circumstances under which "extraordinary and compelling reasons exist." These include: (i) "Medical Condition of the Defendant," (ii) "Age of the Defendant," (iii) "Family Circumstances," and (iv) "Other Reasons." Under U.S.S.G. § 1B1.13, the "extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* at Application Note 2.

There may be other extraordinary and compelling grounds "[a]s determined by the Director of the Bureau of Prisons" that are distinct from the first three categories. U.S.S.G. § 1B1.13, Application Note 1. This final category is described as a "catch-all provision." *Rodriguez*, 424 F. Supp. 3d at 681. Because the Sentencing Commission has "never harmonized its policy statements with the [First Step Act]," the policy statements in U.S.S.G. § 1B1.13 "still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Id.* (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019), *order amended on other grounds on reconsideration*, 457 F. Supp. 3d 691 (S.D. Iowa 2020)). Thus, the Ninth Circuit had held that these policy statements "may inform a district court's discretion for § 3582(c)(1)(A), but they are not binding." *United States v. Aruda*, ___ F.3d ___, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021). Six other circuits have reached the same conclusion. *United States v. Zullo*, 976 F.3d 228, 237-38 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Shkambi*, ___ F.3d ___, 2021 WL 1291609, at *4 (5th Cir. Apr. 7, 2021); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. McGee*, ___ F.3d ___, 2021 WL 1168980, at *12 (10th Cir. Mar. 29, 2021).

        2.    <u>Application</u>

            a)    Medical Condition

Circumstances under "Medical Condition of the Defendant" include a "terminal illness," "i.e., a serious and advanced illness with an end of life trajectory." They also include the following:

    (ii)    The defendant is

        (I)    Suffering from a serious physical or medical condition,
        (II)    Suffering from a serious functional or cognitive impairment, or
        (III)    Experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1.

The record reflects that Defendant suffers from latent tuberculosis. REDACTED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

REDACTED.

On September 24, 2020, Defendant was transferred from FCI Terminal Island to MDC. Dkt. 37 at 5. REDACTED.

On October 20, 2020, Defendant inquired whether there was any tuberculosis treatment he could receive while at MDC. Dkt. 37-4 at 2. He stated that he was having "trouble breathing through my nose." *Id*. REDACTED.

In light of this record, Defendant makes three primary arguments for his release. *First*, he is not able to receive tuberculosis treatment at MDC, and his condition puts him at risk of adverse outcomes from COVID-19. *Second*, his family history of hypertension and heart disease further compounds the risk of an adverse outcome. *Third*, because many other inmates at MDC have refused the COVID-19 vaccine, he remains at risk of infection.

These arguments do not show that Defendant's medical condition, although serious, "substantially diminishes" his ability "to provide self-care within the environment of a correctional facility," nor that it is a condition "from which he…is not expected to recover." Although this Policy Statement is not binding, it remains helpful guidance. *Parker*, 461 F. Supp. 3d at 980 n.9. Nor do these arguments show that Defendant's medical condition is so "extraordinary" that compassionate release is justified. The record does not reflect any current impairments from this condition. REDACTED.   Finally, the evidence as to Plaintiff's family history is speculative. Because Defendant "bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction," *Greenhut*, 2020 WL 509385 at *1, this does not support a finding of extraordinary and compelling circumstances.

As to the availability of tuberculosis treatment, the Government represents that Defendant has not "affirmatively requested TB prophylaxis treatment, or rescinded his prior declination of that treatment". Dkt. 39 at 18-19. Based on this record, Defendant has not made a sufficient showing that he could not receive treatment if he applied through these processes.

        b)        Age of the Defendant

The age of the defendant can be an extraordinary and compelling reason where the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, Application Note 1. Defendant is REDACTED. Therefore, this factor does not weigh in favor of compassionate release.

        c)        Family Circumstances

Family circumstances can present extraordinary and compelling reasons including "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, Application Note 1. Defendant has not presented any evidence as to such family circumstances. Therefore, this factor does not weigh in favor of compassionate release.

        d)        Other Extraordinary and Compelling Grounds

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Defendant has not presented any argument as to other extraordinary and compelling grounds that support compassionate release.

*          *          *

A review of the evidence concerning Defendant's medical conditions shows that he has not demonstrated that compassionate release is warranted under 18 U.S.C. § 3582(c)(1)(A). Although this precludes relief under the multi-part test, the next step is addressed for completeness.

    C.    Factors Under 18 U.S.C. § 3553(a) and Danger to Community

In the third step of the analysis, 18 U.S.C. § 3582 requires a consideration of "the factors set forth in section 3553(a) to the extent that they are applicable." Section 3553(a) presents several factors. Finally, a court must assess whether the moving party is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13, Application Note 4. Although an insufficient showing has been made under the policy statements set forth by the Sentencing Commission, the Section 3553(a) factors are considered for thoroughness.

Section 3553(a) includes the following factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc); 18 U.S.C. § 3553(a)(1)-(7).

Although Defendant was not convicted of a violent crime, his offenses were serious ones. They resulted in the issuance of over $5 million in false federal income tax refunds and over $1 million in false state income tax refunds. At sentencing, it was determined that Defendant's criminal history had been overstated in the Presentence Investigation Report, and that the resulting appropriate Guidelines range was between 46 and 57 months. The seriousness of these offenses warranted a sentence of 48 months, and shows that Defendant presents some ongoing risk to the community. Although the record reflects that Defendant has worked very hard in custody and has not been disciplined, both laudable achievements, Dkt. 37-1 at 4, a review of all relevant Section 3553(a) factors does not clearly support a modified sentence.

**III.**    **Conclusion**

For the reasons stated in this Order, the Motion is **DENIED.**

**IT IS SO ORDERED.**

                                                                                                            : 

Initials of Deputy Clerk    TJ

cc: USPO